**UNITED STATES of America**

v.

**Abraham Amos AUSTIN**

**No. 3:16–cr–00068**

United States District Court,
M.D. Tennessee, Nashville Division.

Filed 02/02/2017

Henry C. Leventis, U.S. Attorney's Office, Middle District of Tennessee, Nashville, TN, for United States of America.

## MEMORANDUM AND ORDER

WAVERLY D. CRENSHAW, JR.,
United States District Judge

### I.   Introduction

Pending before the Court are the Defendant's Motion To Suppress Evidence And Statements (Doc. Nos. 19, 42) and the Government's Response (Doc. Nos. 27, 41) in opposition. The Court held a hearing on the Motion on January 19, 2017. For the reasons set forth herein, the Motion is **DENIED**.

### II.   Factual and Procedural Background

Through the pending Motion, the Defendant seeks to suppress all evidence and statements obtained in connection with a residential search warrant executed at his home on September 11, 2015 (Defendant's Exhibit 1 (Doc. No. 19–1)). The Defendant contends that the residential search warrant was based on information gathered from an earlier, illegal search of his computer through deployment of a "Network Investigation Technique" (hereinafter "NIT") (Defendant's Exhibit 3 (Doc. No. 19–3)) authorized by a warrant issued by a magistrate judge in the Eastern District of Virginia. The NIT Warrant permitted agents to obtain the IP addresses and other information relating to the computers of administrators and users of a child pornography website named "Playpen." (Doc. No. 19–1, at ¶¶ 7, 11, 24). The Defendant argues that the NIT Warrant was void because it was issued in violation of the territorial limitations set forth in 28 U.S.C. § 636 and Federal Rule of Criminal Procedure 41.

According to the affidavit supporting the NIT Warrant, executed by Special Agent Douglas McFarlane of the Federal Bureau of Investigation, the Playpen website operated on "The Onion Router" or "TOR" network, which protects users' privacy online "by bouncing their communications around a distributed network of relay computers run by volunteers all around the world, thereby masking the user's actual IP address which could otherwise be used to identify a user." (Doc. No. 19–3, at ¶¶ 7, 8). The TOR network does not reside on the traditional Internet, and requires the user to take numerous affirmative steps to obtain access. (Id., at ¶ 10). During the period between September 16, 2014, and February 3, 2015, FBI Special Agents accessed the Playpen website, and a detailed description of their observations is included in the affidavit. (Id., at ¶¶ 11–27).

Pursuant to a search warrant executed in January 2015, agents seized a server that contained a copy of the Playpen website and placed the contents of the website on a computer server located at a government facility in Newington, VA, in the Eastern District of Virginia. (Id., at ¶ 28). After obtaining a second search warrant in February 2015 for the residence of the website's administrator, agents assumed administrative control of the website in an effort to locate and identify the site's users through the NIT process. (Id., at ¶ 30).

The affidavit describes the NIT process as follows:

> 33. In the normal course of operation, websites send content to visitors. A user's computer downloads that content and uses it to display web pages on the user's computer. Under the NIT authorized by this warrant, the TARGET WEBSITE, which will be located in

Newington, Virginia, in the Eastern District of Virginia, would augment that content with additional computer instructions. When a user's computer successfully downloads those instructions from the TARGET WEBSITE, located in the Eastern District of Virginia, the instructions, which comprise the NIT, are designed to cause the user's 'activating' computer to transmit certain information to a computer controlled by or known to the government. That information is described with particularity on the warrant (in Attachment B of this affidavit), and the warrant authorizes obtaining no other information. The NIT will not deny the user of the 'activating' computer access to any data or functionality of the user's computer.

34. The NIT will reveal to the government environmental variables and certain registry-type information that may assist in identifying the user's computer, its location, and the user of the computer, as to which there is probable cause to believe is evidence of violations of the statutes cited in paragraph 4 . . .

(Id., at ¶¶ 33, 34).

Through deployment of the NIT, the agents identified the IP address of the Defendant's computer as a user of the Playpen website; and along with additional investigation, agents identified his residence in Rockvale, Tennessee. (Doc. No. 19–1, at ¶¶ 26–40). During execution of the search warrant issued for that residence, agents seized devices containing images of child pornography, and the Defendant made statements to the agents. (Doc. No. 19, at 5; Doc. No. 27, at 3). Through the pending Motion, the Defendant seeks to suppress that evidence and his statements.

At the hearing on January 19, 2017, the Defendant called Jeffrey Cunningham, a digital forensics examiner with Cyber Agents, Inc., to testify as an expert in digital forensics. (Defendant's Exhibit 5 (Jeffrey Cunningham's Curriculum Vitae)). Mr. Cunningham explained that the TOR network, or onion router, was originally developed for Naval intelligence, and provides anonymity for users by wrapping layers of encryption around information as it passes over computers and servers on the TOR network. Through this encryption, a user of the TOR network receiving information on the network is unable to determine the source, or IP address, of the computer sending the information. Consequently, Mr. Cunningham testified, a user who accesses a site within the TOR network, like the Playpen site, is unable to see the IP address of other users. The IP address of an internet network user outside of TOR, by contrast, can be seen by other users.

Mr. Cunningham testified that the NIT at issue in this case, once it is activated on the target computer, secretly gathers information about the computer and sends it back to a government-operated computer outside the TOR network. The NIT is able to do this by using an "exploit," which is a vulnerability in the software, and "piggybacking" on the vulnerability to attach to the target computer when the target computer connects to the Playpen site on the server in Virginia. Once attached, Mr. Cunningham testified, the NIT gathers particular information about the target computer, including the IP address, and sends it back to the government computer.[1] According to Mr. Cunningham, the

---

**1.** Mr. Cunningham testified that his knowledge of the functioning of the NIT was based on the exhibits admitted at the hearing—the NIT search warrant and application, the Title III warrant and application, and the Tennes-

see residential search warrant—as well as the declaration and testimony of FBI Special Agent Daniel Alfin, entered in United States v. Matish, 193 F.Supp.3d 585 (E.D. Va. 2016).

process of information gathering by the NIT from the target computer, wherever located, and the return of that information to the government computer, can be instantaneous.

On cross examination, Mr. Cunningham testified that anonymity for users on the TOR network is not guaranteed. Mr. Cunningham also testified that, in order to access the Playpen website, a user would first be required to download and install a program allowing access to the TOR network, then the user would need to find, and connect to, the address for Playpen on that network. According to Mr. Cunningham, a user would not "stumble onto" the Playpen site.

### III. Analysis

The Defendant argues that the NIT Warrant, upon which the residential search warrant was based, violated the territorial limitations of the Federal Magistrates Act, specifically 28 U.S.C. § 636(a), as well as Federal Rule of Criminal Procedure 41(b), and was therefore, void at its inception. Section 636(a) provides, in relevant part, as follows:

(a) Each United States magistrate judge serving under this chapter shall have within the district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law—

(1) all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts ...

At the time the challenged evidence and statements were obtained in this case, Rule 41(b) provided as follows:

(b) Authority to Issue a Warrant. At the request of a federal law enforcement officer or an attorney for the government:

(1) a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district;

(2) a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;

(3) a magistrate judge—in an investigation of domestic terrorism or international terrorism—with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district;

(4) a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both;[2] and

(5) a magistrate judge having authority in any district where activities related to the crime may have occurred, or in the District of Columbia, may issue a warrant for property that is located outside the jurisdiction of any state or district, but within any of the following:

---

**2.** Rule 41(a)(2)(E) provides that "tracking device" has the meaning set out in 18 U.S.C. § 3117(b). According to that provision, the term "means an electronic or mechanical device which permits the tracking of the movement of a person or object."

(A) a United States territory, possession, or commonwealth;

(B) the premises—no matter who owns them—of a United States diplomatic or consular mission in a foreign state, including any appurtenant building, part of a building, or land used for the mission's purposes; or

(C) a residence and any appurtenant land owned or leased by the United States and used by United States personnel assigned to a United States diplomatic or consular mission in a foreign state.

Rule 41(b) was amended, effective December 1, 2016, to add Subsection (6), which provides as follows:

(6) a magistrate judge with authority in any district where activities related to a crime may have occurred has authority to issue a warrant to use remote access to search electronic storage media and to seize or copy electronically stored information located within or outside that district if: (A) the district where the media or information is located has been concealed through technological means; or (B) in an investigation of a violation of 18 U.S.C. § 1030(a)(5), the media are protected computers that have been damaged without authorization and are located in five or more districts.

The parties appear to agree that this amendment would have provided the magistrate judge with territorial jurisdiction to issue the NIT Warrant at issue here.

Numerous courts across the country have considered the validity of the same NIT Warrant challenged here. In general terms, the decisions fall into three categories. Several courts have determined that the NIT Warrant violated Rule 41(b), or assumed without deciding that the warrant violated Rule 41(b), but, nonetheless, concluded that suppression was not warranted. See United States v. Michaud, 2016 WL 337263 (W.D. Wash. Jan. 28, 2016); United States v. Epich, 2016 WL 953269 (E.D. Wis. Mar. 14, 2016); United States v. Werdene, 188 F.Supp.3d 431 (E.D. Pa. 2016); United States v. Acevedo–Lemus, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016); United States v. Adams, 2016 WL 4212079 (M.D. Fla. Aug. 10, 2016); United States v. Henderson, 2016 WL 4549108 (N.D. Cal. Sept. 1, 2016); United States v. Torres, 2016 WL 4821223 (W.D. Tex. Sept. 9, 2016); United States v. Ammons, 207 F.Supp.3d 732, 2016 WL 4926438 (W.D. Ky. Sept. 14, 2016); United States v. Knowles, 207 F.Supp.3d 585, 2016 WL 6952109 (D.S.C. Sept. 14, 2016); United States v. Broy, 209 F.Supp.3d 1045, 2016 WL 5172853 (C.D. Ill. Sept. 21, 2016); United States v. Anzalone, 208 F.Supp.3d 358, 2016 WL 5339723 (D. Mass. Sept. 22, 2016); United States v. Allain, 213 F.Supp.3d 236, 2016 WL 5660452 (D. Mass. Sept. 29, 2016); United States v. Scarbrough, 2016 WL 5900152 (E.D. Tenn. Oct. 11, 2016); United States v. Stepus, 2016 WL 6518427 (D. Mass. Oct. 28, 2016); United States v. Owens, 2016 WL 7053195 (E.D. Wis. Dec. 5, 2016); United States v. Duncan, 2016 WL 7131475 (D. Or. Dec. 6, 2016); United States v. Dzwonczyk, 2016 WL 7428390 (D. Neb. Dec. 23, 2016).

Other courts have determined that the NIT Warrant did not violate Rule 41(b) because it is a "tracking device" authorized by Rule 41(b)(4), but even if that were not the case, suppression is not warranted. United States v. Darby, 190 F.Supp.3d 520 (E.D. Va. 2016); United States v. Matish, 193 F.Supp.3d 585 (E.D. Va. 2016); United States v. Eure, 2016 WL 4059663 (E.D. Va. July 28, 2016); United States v. Laurita, 2016 WL 4179365 (D.Neb. Aug. 5, 2016); United States v. Jean, 207 F.Supp.3d 920, 2016 WL 4771096 (W.D. Ark. Sept. 13, 2016); United States v. Johnson, 2016 WL 6136586 (W.D. Mo. Oct. 20, 2016); United

States v. Lough, 221 F.Supp.3d 770, 2016 WL 6834003 (N.D. W.Va. Nov. 18, 2016); United States v. McLamb, 220 F.Supp.3d 663, 2016 WL 6963046 (E.D. Va. November 28, 2016); United States v. Sullivan, 2017 WL 201332 (N.D. Ohio Jan. 18, 2017).

Finally, a few courts have concluded that the NIT Warrant violated Rule 41(b), and ordered suppression as a remedy. United States v. Levin, 186 F.Supp.3d 26 (D. Mass. 2016); United States v. Arterbury, No. 15–CR–182 (N.D. Okla. April 25, 2016); United States v. Workman, 205 F.Supp.3d 1256, 2016 WL 5791209 (D. Colo. Sept. 6, 2016); United States v. Croghan, 209 F.Supp.3d 1080, 2016 WL 4992105 (S.D. Iowa Sept. 19, 2016).

Having considered these decisions, along with the arguments of the parties and the evidence admitted in this case, the Court concludes that the NIT Warrant does not violate Rule 41(b) because it is the computer equivalent of a "tracking device," and therefore, falls within the provisions of Subsection (4) of Rule 41(b). As noted above, Subsection (4) permits a magistrate judge to issue a warrant "to install within the district a tracking device ... to track the movement of a person or property located ... outside the district," and "tracking device" is defined as "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 U.S.C. § 3117(b). As the District Court for the Western District of Arkansas concluded in United States v. Jean, the NIT is an "electronic device" within the meaning of this definition, "because it is an investigative tool consisting of computer code transmitted electronically over the internet." 207 F.Supp.3d at 942, 2016 WL 4771096, at *16. Second, the NIT's function was to track the movement of "property" [3]—in this case, intangible information—as it flowed, through the "ex-

ploit," to the target computer. Id. Third, the NIT was "installed" at the site of the Playpen server when the Defendant connected to the Playpen site in the Eastern District of Virginia, and through the "exploit," was able to travel to, and track the location of, the Defendant's computer in Tennessee. Id.

As the Jean Court explained, such an interpretation serves the purpose intended by the tracking device exception:

> The whole point of seeking authority to use a tracking device is because law enforcement does not know where a crime suspect—or evidence of his crime—may be located. In such instances, Rule 41(b)(4) allows a magistrate judge to authorize law enforcement's use of electronic tracking tools and techniques. When an unknown crime suspect, or unknown evidence of his crime, is located in an unknown district, it would be nonsensical to interpret the Rule—as Mr. Jean does—to require law enforcement to make application for such a warrant to an unknown magistrate judge in the unknown district. The fact that the NIT was purposely designed to allow the FBI to electronically trace the activating computer by causing it to return location identifying information from outside the Eastern District of Virginia is not only authorized by Rule 41(b)(4), but is the very purpose intended by the exception.

The warrant application alleged that unknown Playpen users would likely access the website server located in Virginia for purposes of engaging in illegal activity. The application sought authority to track the flow of electronic information while these suspected crimes were occurring. It is undisputed that the NIT authorized by the warrant was exe-

---

**3.** Rule 41(a)(2)(A) defines "property" to include "documents, books, papers, any other

tangible objects, and *information*." (Emphasis added).

cuted by the FBI from its computer located within the Eastern District of Virginia. It is also undisputed that but for Mr. Jean electronically traveling in search of child pornography to the watering hole in Virginia, the NIT could not have been deployed. Thus, on the facts of this case, the only reasonable interpretation of where the information-tracking NIT was 'install[ed]' for purposes of Rule 41(b)(4), is the Eastern District of Virginia, where the tracking device—in this case a string of computer code—was caused to be executed and deployed. The only alternative reading of the Rule would require a finding that magistrate judges do not currently possess authority to issue information-tracking warrants; but such a reading is squarely contradicted by the plain language of Rule 41(a)(2)(A).

Id., at 942–43, *17.[4]

The District Court for the Eastern District of Virginia, in United States v. Darby, used similar reasoning to find that the tracking device exception was "exactly analogous" to use of the NIT:

Users of Playpen digitally touched down in the Eastern District of Virginia when they logged into the site. When they logged in, the government placed code on their home computers. Then their home computers, which may have been outside of the district, sent information to the government about their location.

190 F.Supp.3d 520, 536–37. See also United States v. Matish, 193 F.Supp.3d at 613, 2016 WL 3545776, at *18 (". . . the NIT Warrant authorized the FBI to install a tracking device on each user's computer when that computer entered the Eastern District of Virginia—the magistrate judge's district . . . the installation did not occur on the government-controlled computer but on each individual computer that entered the Eastern District of Virginia when its user logged into Playpen via the Tor network.")

In its decision finding that the tracking device exception applied, the District Court for the Northern District of West Virginia, in United States v. Lough, compared the NIT process to a trip by car to the Eastern District of Virginia:

A summary of the physical and virtual facts concerning how the NIT was employed is helpful. Lough took a virtual trip to the Eastern District of Virginia, but rather than travel by car, he traveled digitally—his vehicle was comprised of packets of information. Once there, the FBI attached a digital electronic tracking device to those packets, which Lough virtually rode back to the Northern District of West Virginia. Upon his virtual return, Lough parked his digital vehicle built of those packets of information on his computer, rather than in his driveway. At that point, the NIT sent back his digital address, just as a GPS tracker would send back his coordinates. Accordingly, the NIT is analogous to a tracking device authorized under Rule 41(b)(4), and the NIT warrant is an information-tracking warrant that comports with Rule 41(b)(4), which Magistrate Judge Buchanan had the authority to issue.

221 F.Supp.3d at 778, 2016 WL 6834003, at *6. As the NIT Warrant falls within the parameters of the tracking device exception, the Court concludes that it does not violate Rule 41(b).

Even if the NIT Warrant does not fall within the tracking device exception, however, the Court is not persuaded that suppression is warranted. In United States v.

---

4. That the Government did not seek the NIT warrant under the "tracking device" exception, and did not seek to satisfy the particular requirements of Rule 41 for a tracking device, does not mean that the exception does not otherwise apply. See Rule 41(e) and (f).

Master, 614 F.3d 236, 241–43 (6th Cir. 2010), the Sixth Circuit held that when a warrant is issued by someone who lacks the legal authority to do so, the result is not automatic suppression of the evidence obtained as a result of the warrant, but instead depends on a balancing of interests. In reaching its decision, the court declined to follow the approach taken in United States v. Scott, 260 F.3d 512, 515 (6th Cir. 2001), which held that a warrant signed by someone who lacks legal authority is "void *ab initio,*" resulting in automatic suppression without regard to the good faith exception to suppression set forth in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Id. In Leon, the Supreme Court held that the exclusionary rule should not bar admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 104 S.Ct. at 3411.[5]

The Master Court explained that the automatic exclusion approach of Scott is at odds with the approach taken by the Supreme Court in Herring v. United States, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), which emphasized that the decision to exclude evidence "is divorced from" the issue of whether a Fourth Amendment violation occurred:

> The exclusionary rule's purpose is instead 'to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.' Herring, 129 S.Ct. at 702. Furthermore, the [Herring] Court noted that the 'exclusionary rule was crafted to curb police rather than judicial miscon-

duct.' Id. at 701. Arguably, the issuing magistrate's lack of authority has no impact on police misconduct, if the officers mistakenly, but inadvertently, presented the warrant to an incorrect magistrate.

Master, 614 F.3d at 242 (footnote omitted).

The determination of whether evidence obtained through an invalid search warrant should be suppressed, the court explained, requires application of a balancing test under which suppression is appropriate only where " 'the benefits of deterrence ... outweigh the costs.' " Id., at 243 (quoting Herring, 129 S.Ct. at 700). Based on the facts in the appeal record, the court noted that:

> ... the costs of excluding the evidence would appear to outweigh any deterrent effect. This is so, in no small measure, because the Herring Court's emphasis seems weighed more toward preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless the officers engage in 'deliberate, reckless, or grossly negligent conduct.' Id. at 702.

Id., at 243. The court remanded the case to the district court, however, in order for all the relevant facts and circumstances to be weighed in applying the balancing test. Id.

The Defendant urges the Court to hold that the NIT Warrant was void *ab initio,* and that suppression is automatic because the Rule 41 violation rises to the level of a Fourth Amendment violation, relying on the Sixth Circuit's decision in Scott, as well

---

**5.** The Leon Court identified four situations in which the exception would not apply: (1) where the affidavit supporting the search warrant contains knowing or reckless falsity; (2) where the issuing magistrate failed to act in a neutral and detached manner; (3) where the supporting affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' "; and (4) where the warrant is so facially deficient, through, for example, lack of particularity regarding the place to be searched or the things to be seized, as to negate the possibility of objectively reasonable reliance. Leon, 104 S.Ct. at 3421.

as the district court decisions in United States v. Croghan, 209 F.Supp.3d at 1088–91, 2016 WL 4992105, at *5–6, and United States v. Levin, 186 F.Supp.3d at 34–35. As explained above, however, the Scott automatic-exclusion approach was rejected by the Sixth Circuit in Master.

The Defendant alternatively argues that, even if the Rule 41 violation is considered to be procedural rather than constitutional, suppression is still warranted because he was "prejudiced" by the violation, relying on the Tenth Circuit's decision in United States v. Krueger, 809 F.3d 1109, 1114 (10th Cir. 2015). In Krueger, the court considered whether suppression was warranted for evidence seized under a search warrant issued by a magistrate judge in Kansas for property located in Oklahoma, which the government conceded was a violation of Rule 41(b). The court assumed that the violation did not rise to the level of a constitutional violation, but held that even if the violation were considered non-constitutional, suppression was warranted because the defendant had established prejudice. 809 F.3d at 1113–15. The Krueger court explained that a defendant could show prejudice by establishing that (1) "the search might not have occurred or

would not have been so abrasive if the Rule had been followed;" or (2) "there is evidence of intentional and deliberate disregard of a provision in the Rule." 809 F.3d at 1114.

The court went on to determine that the defendant "established prejudice in the sense that the Oklahoma search might not have occurred because the Government would not have obtained [the search warrant] had Rule 41(b)(1) been followed." Id., at 1116. The court refused to consider whether an Oklahoma magistrate judge might have issued the warrant because "such hypotheticals simply cannot cure the Government's gross negligence in failing to comply with Rule 41(b)(1) in the first instance." Id.[6]

This Court is not persuaded that the Tenth Circuit's analysis requires suppression here because the Defendant has not established that the agents in this case were grossly negligent in seeking the NIT Warrant from a magistrate judge in the district where the Playpen server was located.[7] In any event, the Krueger Court's relaxed standard for suppression does not appear to be consistent with the Sixth Circuit's analysis in Master, which applied

**6.** The Krueger Court's low bar for the establishment of prejudice has not been uniformly followed by other courts. See, e.g., United States v. Dzwonczyk, 2016 WL 7428390, at *13–14 (Court disagrees with Krueger that prejudice standard prevents consideration of whether evidence could have been obtained by other lawful means); United States v. Werdene, 188 F.Supp.3d at 446 (Distinguishing Krueger by explaining that the Third Circuit defines prejudice more narrowly—"in the sense that it offends concepts of fundamental fairness or due process.").

In discussing Krueger and Levin, some courts have also expressed concern with applying what seems to be a more relaxed standard for suppression when the violation does not rise to a constitutional level. See United States v. Allain, 213 F.Supp.3d at 251, 2016 WL 5660452, at *11 n. 8 ("The Court declines

to conclude that evidence obtained through a warrant that was supported by probable cause, but that ran afoul of a jurisdictional statute must be suppressed, but that evidence seized pursuant to a warrant later found not to be supported by probable cause, an issue of constitutional dimension, can be preserved by a finding of good faith."); United States v. Lough, 221 F.Supp.3d at 783, 2016 WL 6834003, at *10 n. 12 ("... justifying exclusion when a warrant is void ab initio, but inclusion when a warrant is non-existent, as in Herring, would require some semantic gymnastics.").

**7.** In reaching its decision, the Krueger Court distinguished the Sixth Circuit's decision in Master by suggesting that Master involved an inadvertent mistake by the officers involved. Id., at 1117 n. 10.

the Leon good faith standard and the Herring balancing test in determining whether suppression was appropriate to remedy what it considered to be a constitutional violation. Master, 614 F.3d at 241–43. See also United States v. Scarborough, 2016 WL 5900152, at *1–2 (Court found NIT Warrant violates both the Fourth Amendment and Rule 41, but applied Master to determine that suppression was not the appropriate remedy); United States v. Ammons, 207 F.Supp.3d at 742–45, 2016 WL 4926438, at *7–9 (same); United States v. Sullivan, 2017 WL 201332, at *7 (Court holds that even if the NIT Warrant violates Rule 41, suppression is not an appropriate remedy under Master).

Having concluded that suppression is not automatic for Rule 41(b) violations in this circuit, the Court must apply the decisions in Leon and Herring to determine if suppression would otherwise be warranted. The Court concludes that it would not. First, there is nothing in the record in this case indicating that the FBI agents who sought the NIT Warrant deliberately, recklessly, or with gross negligence, selected a magistrate judge who did not have territorial jurisdiction under Rule 41 to issue the warrant. The agents reasonably sought the warrant in the district where the Playpen server was located, and the NIT targeted only those computers that accessed the Playpen website. Given that several district courts have concluded that the magistrate judge actually had the authority under Rule 41's tracking device exception to issue the warrant, it is unreasonable to assume that any lack of authority would have been apparent to the agents. Furthermore, the agents could have applied to an Article III judge in the same district for the NIT Warrant, and Rule 41's territorial restrictions would not have

been implicated. See, e.g., United States v. Dzwonczyk, 2016 WL 7428390, at *14 ("[T]here is no dispute that, had the same supporting documents been presented to a district judge in the Eastern District of Virginia, he or she would have signed the warrant."); United States v. Jean, 207 F.Supp.3d at 944, 2016 WL 4771096, at *18 ("The simple fact to which both parties appear to agree is that an Article III judge in the Eastern District of Virginia could have authorized this particular search warrant."). To the extent there was an error in determining the parameters of Rule 41's territorial jurisdiction, that error rests with the magistrate judge, not with the agents. Under these circumstances, there is little deterrent value to be gained through suppression.[8]

As discussed above, numerous other courts have also determined that suppression would not be an appropriate remedy even if the NIT warrant did violate Rule 41(b). As the court in United States v. Darby explained:

> The FBI agents in this case did the right thing. They gathered evidence over an extended period and filed a detailed affidavit with a federal magistrate in support of their search warrant application. They filed the warrant application in the federal district that had the closest connection to the search to be executed. The information gathered by the warrant was limited: primarily the IP addresses of those that accessed Playpen and additional information that would aid in identifying what computer accessed the site and what individual used that computer. Defendant seeks suppression because of an alleged violation of a Federal Rule of Criminal Procedure, a rule that will likely be changed

8. Specific deterrence—discouraging law enforcement officers from seeking NIT warrants from magistrate judges in the future—is clearly not implicated here as Rule 41 has been amended to permit the issuance of such warrants by magistrate judges.

to allow explicitly this type of search. The pending amendment is evidence that the drafters of the Federal Rules do not believe that there is anything unreasonable about a magistrate issuing this type of warrant; the Rules had simply failed to keep up with technological changes. That is, there is nothing unreasonable about the scope of the warrant itself.

In short, the officers in charge of this investigation are not at all culpable. Additionally, as discussed above, there is no evidence that any failure by the FBI to understand the intricacies of the jurisdiction of federal magistrates was deliberate. Even if the NIT Warrant was void because it was not authorized by the Federal Magistrates Act, suppression is not warranted in this case.

190 F.Supp.3d 520, 537–39.

The Defendant argues that the FBI agents who sought the NIT Warrant should have known that the magistrate judge lacked authority under Rule 41(b) because an Acting Assistant Attorney General in the Department of Justice wrote a letter to the Chair of the Criminal Rules Committee in September, 2013, recommending an amendment to Rule 41 "to update the provisions relating to the territorial limits for searches of electronic storage media." (Defendant's Exhibit 4, at 1). The Defendant has pointed to nothing in the record, however, indicating that an FBI field agent would likely have knowledge of the DOJ's position on the need for updating a rule of criminal procedure. See United State v. Eure, 2016 WL 4059663, at *9 (That the DOJ had been seeking to amend Rule 41(b) to explicitly authorize an NIT warrant does not indicate deliberate violation of the Rule by the agents: "Defendant seeks to attribute to the FBI agents that sought the warrant the legal expertise of the DOJ lawyers" but nothing in the record indicates that the agents knew that the warrant might violate Rule 41.) Having failed to establish that the agents acted in bad faith, or that the exclusionary rule should otherwise be applied, the Defendant's request to suppress the evidence and statements obtained as a result of the NIT Warrant is denied.

### IV.   Conclusion

For the reasons set forth herein, the Defendant's Motion To Suppress Evidence And Statements (Doc. Nos. 19, 42) is **DENIED**.

IT IS SO ORDERED.