FILED

09/26/2018

Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### May 31, 2018 Session

## STATE OF TENNESSEE v. CHARLOTTE LYNN FRAZIER AND ANDREA PARKS

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Dickson County
No. 22CC-2016-CR-59I3  Robert E. Burch, Judge, sitting by Designation**

_____

### No. M2016-02134-SC-R11-CD

_____


The question in this appeal is whether the courts below erred by holding that evidence seized from the defendants' residences in the 19th Judicial District of Tennessee should be suppressed because the warrants were signed by a Circuit Court Judge of the 23rd Judicial District of Tennessee.  We hold that, in the absence of interchange, designation, appointment, or other lawful means, a circuit court judge in Tennessee lacks jurisdiction to issue search warrants for property located outside the judge's statutorily assigned judicial district.  Nothing in the record on appeal establishes that the 23rd Judicial District Circuit Court Judge obtained jurisdiction to issue search warrants for property in the 19th Judicial District by interchange, designation, appointment, or other lawful means.  As a result, the courts below correctly held that the 23rd Judicial District Circuit Court Judge lacked authority to issue the search warrants, and that, as a result, the searches were constitutionally invalid.  Furthermore, although the issue was not raised in the trial court, in the exercise of our supervisory authority, we have considered the State's argument that the good-faith exception to the exclusionary rule applies in these circumstances and conclude that it does not.  Accordingly, we affirm the judgment of the Court of Criminal Appeals, which upheld the trial court's order granting the defendants' motions to suppress.


**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, M. Todd Ridley, Assistant Attorney General, and David W. Wyatt, Assistant District Attorney General, for the appellant, State of Tennessee.

Leonard G. Belmares II, Dickson, Tennessee, for the appellee Charlotte Lynn Frazier.

Tammy L. Hassell, Charlotte, Tennessee, for the appellee Andrea Parks.

## OPINION

### I. Factual and Procedural Background

The relevant facts are undisputed. In September 2014, various law enforcement agencies, including the Tennessee Drug Task Forces of the 23rd and 19th Judicial Districts, began a collaborative investigation of a suspected conspiracy to distribute methamphetamine throughout Middle Tennessee.[1] As part of this investigation, a Circuit Court Judge of the 23rd Judicial District, which is comprised of Cheatham, Dickson, Houston, Humphreys, and Stewart Counties,[2] issued multiple wiretap orders from July to October 2015. These orders authorized the interception of audio and text message communications for multiple phone numbers, including a phone number of one of the defendants to this appeal.[3]

---

[1] The other participating agencies included the United States Drug Enforcement Administration, Kentucky State Police, and the Clarksville Police Department.

[2] See Tenn. Code Ann. § 16-2-506(23)(A) (Supp. 2018).

[3] The validity of the wiretap orders is not at issue in this appeal. We note that the statute authorizing the interception of wire communications expressly confers authority to issue such warrants on "a judge of competent jurisdiction . . . *in any district where jurisdiction exists to prosecute the underlying offense.*" Tenn. Code Ann. § 40-6-304(a) (2018) (emphasis added); see also id. § 40-6-304(c) (2018) ("Upon an application the judge may enter an ex parte order, as requested or as modified, authorizing interception of wire, oral[,] or electronic communications *within the district in which the judge is sitting, and outside that district but within this state in the case of a mobile interception device,* if the judge" determines that the facts in the application establish probable cause and satisfy the other requirements specified in the statute. (emphasis added)).

In late October 2015, relying in part on information obtained from the wiretaps, agents of the 23rd Judicial District Drug Task Force applied for warrants to search the residences of the defendants, Charlotte Frazier and Andrea Parks. Ms. Frazier's residence was located in Montgomery County, and Ms. Parks' residence was located in Robertson County. Although Montgomery and Robertson Counties are located in the 19th Judicial District,[4] the agents submitted the search warrant applications to the same 23rd Judicial District Circuit Court Judge who had issued the wiretap orders because of his familiarity with the investigation. The 23rd Judicial District Circuit Court Judge issued the warrants for the defendants' residences.

During the ensuing search of Ms. Parks' home, the police seized 17.9 ounces (507 grams) of methamphetamine, 20 grams of marijuana, and marijuana paraphernalia. During the search of Ms. Frazier's home, the police seized "approximately [1] kilogram of crystal methamphetamine, $112,031.00 in U.S. Currency, approximately 100 ecstasy pills, [2] sheets of LSD, [2] ounces [(57 grams)] of marijuana, drug paraphernalia, digital scales, several cellular telephones, and assorted rounds of ammunition." From a vehicle parked outside Ms. Frazier's residence, the police also seized "[8] ounces (227 grams) of crystal methamphetamine, $38,838.00 in U.S. Currency, a loaded Glock handgun[,] and a Remington 12 gauge shotgun."

Later, on February 17, 2016, the defendants, and nearly 100 other people, were charged via presentment in Dickson County, part of the 23rd Judicial District, with one count of conspiracy to distribute 300 grams or more of methamphetamine, a Class A felony. See Tenn. Code Ann. §§ 39-17-408(d)(2) (2018), 39-17-417(a), (j)(10) (2018). The defendants thereafter filed separate motions to suppress the evidence seized from their residences pursuant to the warrants. They challenged the constitutional validity of the warrants by arguing that the Circuit Court Judge for the 23rd Judicial District lacked jurisdiction to issue the search warrants because their residences were located outside his statutorily defined judicial district.[5] The defendants relied on Tennessee Rule of Criminal Procedure 41(a), which authorizes "[a] magistrate *with jurisdiction in the county where the property sought is located* [to] issue a search warrant." Tenn. R. Crim. P. 41(a) (emphasis added). Additionally, the defendants relied on state statutes defining and circumscribing the geographical jurisdiction of circuit court judges to statutorily defined judicial districts and asserted that a circuit court judge has no authority outside the judge's statutorily defined judicial district in the absence of interchange, designation,

---

[4] Tenn. Code Ann. § 16-2-506(19)(A)(i) (Supp. 2018).

[5] All told, the 23rd Judicial District Circuit Court Judge issued eighteen search warrants connected to this investigation for properties located outside of the 23rd Judicial District. As of the date of the State's application for interlocutory appeal in the trial court, September 15, 2016, only these two defendants had challenged the search warrants.

appointment, or some other lawful means. Because the 23rd Judicial District Circuit Court Judge had not obtained authority to act in the 19th Judicial District by any of these means, the defendants argued that the warrants were invalid, that the searches of their residences violated the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution, and that the evidence should be suppressed. The State opposed the defendants' motions to suppress, arguing based on another statute, that when issuing search warrants as "magistrates," circuit court judges in Tennessee have jurisdiction "throughout the state" and may issue search warrants for property located outside their assigned judicial districts. See Tenn. Code Ann. § 40-1-106 (2018).

A retired circuit court judge of the 23rd Judicial District was designated to adjudicate the defendants' motions to suppress. Separate hearings were held, but the parties presented no proof at either hearing because the motions presented the same question of law, and the relevant facts were undisputed. On September 13, 2016, the trial court entered separate orders granting the motions to suppress. Relying on "the plain language of Tennessee Rule of Criminal Procedure 41(a)," the trial court ruled that a circuit court judge lacks jurisdiction to issue search warrants for property located outside the judge's statutorily defined judicial district in the absence of interchange, designation, appointment, or some other lawful means of obtaining jurisdiction in another judicial district. Because none of these means had been used to confer authority on the 23rd Judicial District Circuit Court Judge to issue search warrants for the defendants' residences in the 19th Judicial District, the trial court declared the search warrants constitutionally invalid and granted the defendants' motions to suppress.[6] The trial court denied as premature the defendants' request to dismiss the charges.

Subsequently, the trial judge granted the State's request for permission to seek interlocutory appeals in both cases, pursuant to Tennessee Rule of Appellate Procedure 9, on the single issue of whether a circuit court judge has authority when acting as a magistrate to issue search warrants for property located outside the circuit court judge's statutorily assigned judicial district. The Court of Criminal Appeals granted the State's applications for interlocutory appeals, consolidated the appeals, and affirmed the trial court's orders granting the defendants' motions to suppress. State v. Frazier, No. M2016-02134-CCA-R9-CD, 2017 WL 4251118 at *8 (Tenn. Crim. App. Sept. 25, 2017), perm. app. granted (Tenn. Feb. 14, 2018). In addition to the single issue identified in the State's application for interlocutory appeal, the intermediate appellate court also addressed the State's argument, raised for the first time on appeal, that the evidence

---

[6] During the hearing, the prosecutor reminded the designated trial judge of an earlier case in which the designated trial judge, before his retirement, had issued a search warrant for property located outside the 23rd Judicial District. To this reminder the designated trial judge remarked, "While it may have been the practice of the 23rd Judicial District Judges to issue search warrants outside of [the] district, it does not make it right."

should not be suppressed, even if the 23rd Judicial District Circuit Court Judge lacked authority to issue the warrants, because either the statutory good-faith exception to the exclusionary rule[7] or the good-faith exception to the exclusionary rule that this Court adopted after the defendants' suppression hearings[8] applies in this case. The Court of Criminal Appeals concluded that neither good-faith exception applies in these circumstances.

The State then filed an application for permission to appeal in this Court pursuant to Tennessee Rule of Appellate Procedure 11, raising two issues: (1) whether Tennessee Rule of Criminal Procedure 41 and Tennessee Code Annotated section 40-1-106 authorize a circuit court judge to issue search warrants for property located outside of the judge's assigned judicial district; and (2) if the search warrants were obtained in error, whether the violation is subject to Tennessee's good-faith exception to the exclusionary rule. We granted the State's application.

## II. Standards of Review

While this is an appeal from the trial court's decision granting the defendants' motions to suppress, the relevant facts are undisputed, as the parties offered no proof at the suppression hearing. As a result, we address only legal issues in this appeal. We review these legal questions de novo, affording no presumption of correctness to the decisions of the courts below. Womack v. Corr. Corp. of Am., 448 S.W.3d 362, 366 (Tenn. 2014) (citing Baker v. State, 417 S.W.3d 428, 433 (Tenn. 2013); Keen v. State, 398 S.W.3d 594, 599 (Tenn. 2012)).

## III. Analysis

### A. Geographical Jurisdiction of Circuit Court Judges as Magistrates

"The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution safeguard individuals from unreasonable searches and seizures." State v. Hannah, 259 S.W.3d 716, 720 (Tenn. 2008). "[S]earches and seizures conducted pursuant to warrants are presumptively reasonable," but "warrantless searches and seizures are presumptively unreasonable." State v. McCormick, 494 S.W.3d 673, 678–79 (Tenn. 2016) (citing State v. Scarborough, 201 S.W.3d 607, 616–17 (Tenn.

---

[7] This Court recently held that Tennessee Code Annotated section 40-6-108 (2012), the statutory good-faith exception, is unconstitutional because it violates the separation of powers clause of the Tennessee Constitution. State v. Lowe, 552 S.W.3d 842, 857 (Tenn. 2018).

[8] See State v. Reynolds, 504 S.W.3d 283, 313 (Tenn. 2016); State v. Davidson, 509 S.W.3d 156, 185–86 (Tenn. 2016).

2006); <u>Kentucky v. King</u>, 563 U.S. 452, 459 (2011); <u>State v. Bell</u>, 429 S.W.3d 524, 529 (Tenn. 2014)). As a general rule, search warrants will not issue "unless a neutral and detached magistrate determines that probable cause exists for their issuance." <u>State v. Tuttle</u>, 515 S.W.3d 282, 299 (Tenn. 2017) (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 240 (1983); <u>State v. Henning</u>, 975 S.W.2d 290, 294 (Tenn. 1998); <u>State v. Jacumin</u>, 778 S.W.2d 430, 431 (Tenn. 1989), <u>overruled on other grounds by</u> <u>Tuttle</u>, 515 S.W.3d at 305–08)). When courts use the word "magistrate" in the context of addressing constitutional search and seizure issues, the term generally refers to those persons authorized by law to "issue warrants." <u>Shadwick v. Tampa</u>, 407 U.S. 345, 348 (1972) (citing <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 449–53 (1971); <u>Whiteley v. Warden</u>, 401 U.S. 560, 566 (1971); <u>Katz v. United States</u>, 389 U.S. 347, 356–57 (1967); <u>United States v. Ventresca</u>, 380 U.S. 102, 108 (1965); <u>Giordenello v. United States</u>, 357 U.S. 480, 486 (1958); <u>Johnson v. United States</u>, 333 U.S. 10, 13–14 (1948); <u>United States v. Lefkowitz</u>, 285 U.S. 452, 464 (1932), <u>abrogation on other grounds recognized by</u> <u>Arizona v. Gant</u>, 556 U.S. 332, 350 (2009)). "So long as [magistrates] are neutral and detached and capable of the probable-cause determination required of them," the United States Supreme Court has afforded states "some flexibility and leeway in their designation of magistrates." <u>Shadwick</u>, 407 U.S. at 354; <u>see also</u> <u>United States v. Master</u>, 614 F.3d 236, 240 (6th Cir. 2010) ("The qualifications of a magistrate are . . . inextricably intertwined with state law.").

Tennessee law defines "search warrant" as an "order in writing in the name of the state, *signed by a magistrate*, directed to the sheriff, any constable, or any peace officer . . . commanding the sheriff, constable[,] or peace officer to search for personal property, and bring it before the magistrate." Tenn. Code Ann. § 40-6-101 (2012) (emphasis added).[9] Likewise, Rule 41 of the Tennessee Rules of Criminal Procedure provides that "*[a] magistrate* with jurisdiction *in the county where the property sought is located* may issue a search warrant." Tenn. R. Crim. P. 41(a) (emphasis added).[10] Both a rule of

---

[9] Magistrates also carry out a variety of other functions in Tennessee. <u>See, e.g.</u>, Tenn. Code Ann. § 33-10-407(e)(2) (2015) (committing persons to alcohol abuse treatment facilities); Tenn. Code Ann. §§ 36-3-601(3)(D), -605 to -606, -612 (2017 & Supp. 2018) (issuing restraining orders or taking other actions to address domestic abuse); Tenn. Code Ann. § 37-1-107 (Supp. 2018) (presiding over juvenile court proceedings); Tenn. Code Ann. § 40-5-105 (2018) (setting bail for criminal defendants); Tenn. Code Ann. §§ 40-10-101 to -114 (2018) (presiding over preliminary examinations); Tenn. Code. Ann. § 40-11-104 (2018) (setting bail for criminal defendants); Tenn. Code Ann. § 40-33-204(j) (2018) (authorizing civil forfeitures); Tenn. R. Crim. P. 5(b)–(c) (taking and entering pleas in small offense and misdemeanor cases and trying cases for small offenses); Tenn. R. Crim. P. 5.1 (conducting preliminary hearings).

[10] Other provisions make clear that, before issuing a search warrant, a magistrate must examine affidavits setting forth facts establishing probable cause and make a determination that probable cause for the search exists. <u>See, e.g.</u>, Tenn. Code Ann. §§ 40-6-104 to -105 (2018).

criminal procedure and statutes make clear that circuit court judges may function as magistrates for purposes of issuing search warrants. Tenn. Code Ann. § 17-1-103(b) (Supp. 2018) (describing circuit court judges as judges of courts of record); Tenn. Code Ann. § 40-1-106 (2018) (stating that circuit court judges are magistrates); Tenn. R. Crim. P. 1(e)(3) (defining magistrate as including "all judges of courts of record in the [S]tate"). The critical question then, for purposes of this appeal, is what is the geographical jurisdiction of a circuit court judge who is acting as a magistrate?

To answer this question, we begin with the Tennessee Constitution, which provides the General Assembly with power to establish "[t]he jurisdiction of the Circuit, Chancery[,] and other Inferior Courts." Tenn. Const. art. VI, § 8; see also Tenn. Const. art. VI, § 1. The General Assembly has exercised this constitutional authority by enacting a statute that divides Tennessee "into thirty-one (31) judicial districts" and delineates the county or counties included in each judicial district. Tenn. Code Ann. § 16-2-506 (Supp. 2018). Other statutes provide that circuit court judges are to be elected by the voters of their "respective judicial districts," Tenn. Code Ann. § 17-1-103(b) (Supp. 2018), and that each circuit court judge must "reside in the judicial district or division for which the judge . . . is elected," Tenn. Code Ann. § 17-1-102 (2009). Another statute confirms that circuit court judges are judges "for the state at large" and then declares that, "as such, [circuit court judges] may, *upon interchange and upon other lawful ground, exercise the duties of office in any other judicial district in the state.*" Tenn. Code Ann. § 17-1-203 (2009) (emphasis added).[11] Still another separate statute states that "[a]ny judge or chancellor *may exercise by interchange, appointment, or designation the jurisdiction of any trial court* other than that to which the judge or chancellor was elected or appointed." Tenn. Code Ann. § 16-2-502 (2009) (emphasis added). Read together, the plain language of the foregoing statutes confines the geographical jurisdiction of a circuit court judge to the judge's statutorily defined and assigned judicial district and authorizes a circuit court judge to exercise "the jurisdiction of any other trial court" only by "interchange, appointment, or designation," or "other lawful ground." In the absence of interchange, appointment, designation, or other lawful ground, circuit court judges may neither "exercise the duties of office in any other judicial district" nor exercise "the jurisdiction of any trial court other than that to which the judge . . . was elected or appointed."

The State does not take issue with the plain meaning of the foregoing statutes. Instead, the State argues that another statute, which the State characterizes as more specifically addressing the question presented here, expands the geographical jurisdiction

---

[11] See also Mid-South Milling Co. v. Loret Farms, Inc., 521 S.W.2d 586, 590 (Tenn. 1975) ("Tennessee has only one circuit court . . . . A county does not have a circuit court. The State has a circuit court which sits in the various counties.").

of circuit court judges when they are acting as magistrates. The statute on which the State relies provides:

> The judges of the supreme, appellate, chancery, circuit, general sessions and juvenile courts *throughout the state*, judicial commissioners and county mayors in those officers' respective counties, and the presiding officer of any municipal or city court within the limit of their respective corporations, are magistrates within the meaning of this title.

Tenn. Code Ann. § 40-1-106 (2018) (emphasis added). The State interprets the phrase "throughout the state" as conferring statewide jurisdiction on "judges of the supreme, appellate, chancery, circuit, general sessions[,] and juvenile courts." The State says that this statute limits the jurisdiction of the other named officials—judicial commissioners, county mayors, and the presiding officers of municipal and city courts—to their respective counties or corporations when acting as magistrates. The State also relies on the statute's location in the Jurisdiction and Venue Chapter of the Criminal Procedure Volume of the Tennessee Code. The State says that the Court of Criminal Appeals erred by finding the statutory language ambiguous and that the statute clearly confers on circuit court judges the authority to issue search warrants for property located "throughout the state." Furthermore, the State points to federal district court decisions and a prior Tennessee Attorney General's opinion as support for its assertion that circuit court judges have authority to issue search warrants for property located "throughout the state" when acting as magistrates. See United States v. Maddox, No. 2:09-CR-45, 2010 WL 2902247 (E.D. Tenn. June 21, 2010); United States v. Muncey, 185 F. Supp. 107 (E.D. Tenn. 1960); Tenn. Att'y Gen. Op. 85-057 (Mar. 1, 1985).

In resolving this question of statutory construction, we are guided by the following "well-defined precepts." Tenn. Dep't of Corr. v. Pressley, 528 S.W.3d 506, 512 (Tenn. 2017) (quoting State v. Howard, 504 S.W.3d 260, 269 (Tenn. 2016)).[12] First, "[t]he most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Id. (quoting Howard, 504 S.W.3d at 269). To fulfill this directive, we begin with the statute's plain language. Spires v. Simpson, 539 S.W.3d 134, 143 (Tenn. 2017). "When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use." Hannah, 259 S.W.3d at 721 (quoting Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004)). A statute is ambiguous when "the parties derive different interpretations from the statutory language." Howard, 504 S.W.3d at 270 (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). However,

---

[12] These same precepts also apply to the interpretation of Rules of Criminal Procedure. See Schneider v. City of Jackson, 226 S.W.3d 332, 341 (Tenn. 2007); State v. Crowe, 168 S.W.3d 731, 743–44 (Tenn. 2005).

"[t]his proposition does not mean that an ambiguity exists merely because the parties proffer different interpretations of a statute. A party cannot create an ambiguity by presenting a nonsensical or clearly erroneous interpretation of a statute." Powers v. State, 343 S.W.3d 36, 50 n.20 (Tenn. 2011). In other words, both interpretations must be reasonable in order for an ambiguity to exist. Id. If an ambiguity exists, however, "we may reference the broader statutory scheme, the history of the legislation, or other sources" to determine the statute's meaning. State v. Sherman, 266 S.W.3d 395, 401 (Tenn. 2008) (citing Parks v. Tenn. Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998)). We avoid constructions that place one statute in conflict with another and endeavor to resolve any possible conflict between statutes to provide for a harmonious operation of the laws. Lovlace v. Copley, 418 S.W.3d 1, 20 (Tenn. 2013). Second, "[w]here a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision." Id. (quoting Graham v. Caples, 325 S.W.3d 578, 582 (Tenn. 2010)). "When one statute contains a given provision, the omission of the same provision from a similar statute is significant to show that a different intention existed." State v. Lewis, 958 S.W.2d 736, 739 (Tenn. 1997).

Applying these principles, we agree with the State that section 40-1-106 is not ambiguous, but we reject the State's proposed interpretation of the statute.[13] Like the defendants, we interpret section 40-1-106 as merely listing the judicial officials present "throughout the state" who may function as magistrates, not as an expansion of the geographical jurisdiction conferred on circuit court judges by other statutes. Using ellipses to focus attention on the relevant text, the statute, in relevant part, provides that "[t]he judges of the . . . circuit . . . courts throughout the state . . . are magistrates within the meaning of this title." Tenn. Code Ann. § 40-1-106 (2018). The State's proposed interpretation would drastically expand the geographical jurisdiction of circuit court judges acting as magistrates, even though the term "jurisdiction" is not used in the statute and even though other statutes very carefully circumscribe the geographical jurisdiction of circuit court judges. We decline to conclude that the General Assembly intended to expand by silence the circumscribed geographical jurisdiction it has explicitly conferred on circuit court judges through other statutes. See Lewis, 958 S.W.2d at 739.

---

[13] The Court of Criminal Appeals concluded that the statute is ambiguous and reviewed the history, versions, and modifications of this statute from 1932 to the present, focusing on an amendment to include general sessions judges as magistrates in 1978 and an amendment to include juvenile court judges as magistrates in 1993. Frazier, 2017 WL 4251118 at *4–6. Because this case involves a circuit court judge acting as magistrate and because we have concluded that the statute is unambiguous, we need not address this legislative history or the jurisdictional limitations of general sessions and juvenile court judges acting as magistrates.

We also are not persuaded by the State's argument that the statute's location in the Jurisdiction and Venue Chapter of the Code supports its interpretation of the statute. Again, neither the word "jurisdiction" nor any synonym for it appears in the statute. We cannot logically view the statute's location in the Code as more indicative of legislative intent than the statutory language. Cf. Tenn. Code Ann. § 1-3-109 (2014) ("Headings to sections in this code and the references at the end of such sections giving the source or history of the respective sections shall not be construed as part of the law."). Additionally, the State has offered no basis to support a conclusion that the General Assembly intended to convey its intent by locating the statute in this part of the Code. Our own research suggests that the statute's location should *not* be viewed as indicative of legislative intent.[14]

We also reject the State's argument that declining to adopt its proposed interpretation renders the text "throughout the state"—and the other geographic language in section 40-1-106—superfluous. Again, we disagree. By construing the phrase as descriptive of the judicial officers "throughout the state" who may function as magistrates, we remain faithful to the statutory text. Our interpretation of this phrase also is consistent with how the General Assembly has used it in other statutory provisions. See, e.g., Tenn. Code Ann. § 40-1-110 (2018) ("The judges of the courts of general sessions and other similar courts created by statute *throughout the state* are authorized to issue any and all process in connection with criminal cases disposed of by them . . . ." (emphasis added)); Tenn. Code Ann. § 37-1-603(b)(4)(A)(v) (Supp. 2018) ("It is the intent of the general assembly to encourage the establishment of child sex crime investigation units in sheriffs' departments and police agencies *throughout the state . . . .*" (emphasis added)).

Finally, our refusal to interpret this phrase as conferring expanded geographic jurisdiction on circuit court judges is supported by other statutes in which the General Assembly has deemed it necessary to confer expressly expanded geographic jurisdiction on circuit court judges issuing warrants. See, e.g., Tenn. Code Ann. § 40-6-304(a) (2018) (addressing warrants authorizing the interception of wire communications and conferring authority to issue such warrants on "a judge of competent jurisdiction . . . *in any district where jurisdiction exists to prosecute the underlying offense*" (emphasis added)); id. § 40-6-304(c) (2018) ("Upon an application the judge may enter an ex parte order . . . authorizing interception of wire, oral[,] or electronic communications *within the district in which the judge is sitting, and outside that district but within this state in the*

---

[14] Prior to the 1956 reorganization in which the Tennessee code "was merely recodified" and "no attempt was made to enact new legislation," Preface, Tennessee Code Annotated, Vol. 1 (1955), this section was titled "Who are magistrates in the meaning of this chapter," Shannon's Code § 4943 (1858), and "Who are magistrates," Tennessee Code § 11428 (1932). After the 1956 reorganization, this provision was placed in the chapter on "Jurisdiction and Venue," and the section title was changed to "Officials defined as magistrates," as it currently reads. Tenn. Code Ann. § 40-1-106 (2018).

*case of a mobile interception device,* if the judge" determines that the facts in the application establish probable cause and satisfy the other requirements specified in the statute. (emphasis added)). If, as the State argues, circuit court judges acting as magistrates already possess expanded geographical jurisdiction by virtue of Tennessee Code Annotated section 40-1-106, then statutes expressly expanding their geographical jurisdiction would have been unnecessary. Cf. Lewis, 958 S.W.2d at 739.

The State is correct that its proposed interpretation is consistent with two prior federal district court decisions and a prior Attorney General's opinion. Yet, we find their reasoning unpersuasive. As the final arbiter of state law, Becker v. Ford Motor Co., 431 S.W.3d 588, 594 (Tenn. 2014), this Court is not bound to follow these authorities, Strouth v. State, 999 S.W.2d 759, 765 n.9 (Tenn. 1999) ("[T]his Court is not bound by decisions of the federal district and circuit courts."); Washington Cnty. Bd. of Educ. v. MarketAmerica, Inc., 693 S.W.2d 344, 348 (Tenn. 1985) ("Although opinions of the Attorney General are useful in advising parties as to a recommended course of action and to avoid litigation, they are not binding authority for legal conclusions, and courts are not required or obliged to follow them.").

For all these reasons, we decline to adopt the State's proposed interpretation of section 40-1-106 and hold that, in the absence of interchange, designation, appointment, or some other lawful means of obtaining expanded geographical jurisdiction, a circuit court judge lacks authority to issue search warrants for property located outside the judge's statutorily assigned judicial district. Applying this holding, we conclude that the 23rd Judicial District Circuit Court Judge lacked jurisdiction to issue search warrants for the defendants' residences in the 19th Judicial District. The warrants are therefore invalid under the Fourth Amendment because, as already explained, states are vested with authority to determine who may function as magistrates and to delineate the limits of a magistrate's authority. Master, 614 F.3d at 239–40.

### B. Suppression of the Evidence and the Good-Faith Exception to the Exclusionary Rule

Despite our holding that the circuit court judge lacked geographical jurisdiction to issue the warrants, the State still urges us to reverse the decisions below granting the defendants' motions to suppress. The State asks us to apply the good-faith exception to the exclusionary rule that we first adopted in Reynolds, 504 S.W.3d at 313, and later applied in Davidson, 509 S.W.3d at 185–86. In particular, the State argues that the defect in the warrants here is similar to the "inadvertent" technical error in Davidson, where an officer signed the warrant rather than the affidavit in support of the warrant, as required by Tennessee Code Annotated sections 40-6-103 and -104. 509 S.W.3d at 183. In Davidson, we held that the trial court correctly declined to grant the defendant's motion to suppress as a result of the "inadvertent" error. Id. at 185–86. More recently, in State

v. Daniel, 552 S.W.3d 832 (Tenn. 2018), this Court summarized our application of the good-faith exception to the exclusionary rule for cases involving an "inadvertent," "clerical," or "technical" violation of Rule 41 that did not result in any prejudice to a defendant. Id. at 838–40 (discussing Lowe, 552 S.W.3d at 858–59, and Davidson, 509 S.W.3d at 184).

This case, however, does not involve an inadvertent, clerical, or technical error. Here, the 23rd Judicial District Circuit Court Judge exceeded the geographical jurisdiction granted him by Tennessee law when he issued the search warrants for the defendants' residences in the 19th Judicial District. "It follows that [this] violation was of constitutional magnitude because 'at the time of the framing . . . a warrant issued for a search or seizure beyond the territorial jurisdiction of a magistrate's powers under positive law was treated as no warrant at all.'" United States v. Werdene, 883 F.3d 204, 214 (3d Cir. 2018) (quoting United States v. Krueger, 809 F.3d 1109, 1123 (10th Cir. 2015) (Gorsuch, J., concurring)); see also Master, 614 F.3d at 239. Therefore, the search warrants here were void. See, e.g., Werdene, 883 F.3d at 214 (stating that the warrant was "void ab initio" because it violated "jurisdictional limitations and was not authorized by any positive law"); United States v. Ortiz-Cervantes, 868 F.3d 695, 702 (8th Cir. 2017) (stating that "when a magistrate judge issues a search warrant outside his jurisdiction, that search warrant is 'invalid at its inception and therefore the constitutional equivalent of a warrantless search'" (quoting United States v. Horton, 863 F.3d 1041, 1049 (8th Cir. 2017))); Master, 614 F.3d at 241–42 (stating that "when a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void *ab initio*" (citation omitted)); State v. Rupnick, 125 P.3d 541, 551–52 (Kan. 2005) (holding that a search warrant executed outside of the county where a judge has jurisdiction is "invalid"); State v. Wilson, 618 N.W.2d 513, 519 (S.D. 2000) (same); Sanchez v. State, 365 S.W.3d 681, 686 (Tex. Crim. App. 2012) (same); State v. Hess, 785 N.W.2d 568, 575–76 (Wis. 2010) (holding that an arrest warrant was void "*ab initio*" by analogy to Wisconsin case law that, "where a magistrate lacked authority to issue a [particular type of search] warrant, the search conducted and evidence seized resulted in a constitutional violation"). Thus, our holdings in Daniel, Lowe,[15] and Davidson are not controlling.

In Reynolds, we considered whether to adopt the good-faith exception articulated by the Supreme Court in Davis v. United States, 564 U.S. 229 (2011). 504 S.W.3d at 314. Ultimately, we adopted a narrow good-faith exception applicable only when law enforcement officers take action "in objectively reasonable good faith reliance on *binding* appellate precedent that *specifically authorizes* [the] particular police practice." Id. at 313 (internal quotation marks omitted).

---

[15] In light of our previously mentioned holding in Lowe that the statutory good-faith exception is unconstitutional, 552 S.W.3d at 857, we need not discuss whether it applies in this case.

Here, the State cites only *persuasive* authority, including the 1985 Tennessee Attorney General Opinion, Tenn. Att'y Gen. Op. 85-057, and two federal district court opinions, Maddox, 2010 WL 2902247, at *1 (citing Tenn. Code Ann. § 17-1-203); Muncey, 185 F. Supp. at 110, as the basis for the officers' decision to present the search warrant applications to the 23rd Judicial District Circuit Court Judge.  As we have already noted, none of these persuasive authorities are binding on this Court.  And, as we stated in Reynolds, "[p]ersuasive precedent from other jurisdictions is not a sufficient basis" for applying the good-faith exception we recognized in Reynolds.  504 S.W.3d at 513.  Based on the narrowness of our holding in Reynolds, the good-faith exception adopted therein does not apply in these circumstances.

We decline to extend the good-faith exception to the circumstances of this case. The State raised the good-faith exception for the first time on appeal.  The State has relied on existing Tennessee authority recognizing the good-faith exception and has not asked us to extend Tennessee's good-faith exception to apply to a void search warrant issued by a circuit court judge lacking geographical jurisdiction in the county where the property searched is located.  Given the narrowness of our holdings in Reynolds and Davidson, the delay in raising the issue, the absence of a specific request for extension of the good-faith exception from the State, and the limited scope of review in interlocutory appeals, Wallis v. Brainerd Baptist Church, 509 S.W.3d 886, 896 (Tenn. 2016), we decline to extend the good-faith exception to the circumstances of this case.[16]

## IV. Conclusion

For the reasons stated herein, we affirm the judgment of the Court of Criminal Appeals upholding the trial court's decisions granting the defendants' motions to suppress.  We remand this matter to the trial court for any other proceedings that may be necessary and appropriate.  Costs of this appeal are taxed to the State of Tennessee.

_____
CORNELIA A. CLARK, JUSTICE

---

[16] We recognize that other courts have recently applied the good-faith exception in circumstances similar to these by relying largely on the good-faith-exception analysis the United State Supreme Court applied in Herring v. United States, 555 U.S. 135 (2009).  See, e.g., United States v. McLamb, 880 F.3d 685, 690–91 (4th Cir. 2018); United States v. Levin, 874 F.3d 316, 322–23 (1st Cir. 2017); Horton, 863 F.3d at 1049–52; United States v. Workman, 863 F.3d 1313, 1318–19 (10th Cir. 2017); Master, 614 F.3d at 243; United States v. Hinds, No. 17-CR-20058-SHM-TMP, 2017 WL 9477645, at *3–6 (W.D. Tenn. Nov. 21, 2017), report and recommendation adopted, No. 2:17-CR-20058-SHM, 2018 WL 624111 (W.D. Tenn. Jan. 30, 2018); United States v. Uskokovic, 15-CR-351 (PKC), 2017 WL 5198193, at *5–6 & n.9 (E.D.N.Y. Nov. 10, 2017); United States v. Austin, 230 F. Supp. 3d 828, 832–33 (M.D. Tenn. 2017).