**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4124**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GREGORY KYLE SEERDEN,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Raymond A. Jackson, District Judge. (2:17-cr-00067-RAJ-DEM-1)

Argued: December 11, 2018                          Decided: February 20, 2019

Before WILKINSON, AGEE, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

**ARGUED:** Andrew William Grindrod, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, David A. Layne, Special Assistant United States Attorney, Elizabeth M. Yusi, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

THACKER, Circuit Judge:

In January 2017 investigators with the Naval Criminal Investigation Service ("NCIS") obtained a military warrant to search the cell phone of Gregory Kyle Seerden ("Appellant") for evidence of sexual assault. During the search of Appellant's phone, the investigators found child pornography. On that basis, the investigators then obtained a federal warrant to search Appellant's phone a second time and again found child pornography. Appellant moved to suppress the evidence, arguing that the first search was unlawful because it violated the Military Rules of Evidence and that evidence obtained during the second search was fruit of the poisonous tree.

Although the district court agreed that evidence obtained during the military search was inadmissible because it violated the Military Rules of Evidence, it nonetheless found that the good faith exception allowed the government to admit evidence discovered via the second search.

On September 20, 2017, Appellant entered a conditional guilty plea to production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e). He subsequently filed this appeal. As explained below, we affirm on different grounds.

I.

Appellant was a member of the United States Navy's Sea, Air, and Land Team. At all times relevant to this appeal, he was stationed in San Diego, California. But for one week in January 2017, Appellant attended a training at the Little Creek base in Virginia Beach, Virginia. During that week, Appellant was accused of sexual assault and suspected of possession of child pornography.

2

On his next to last night of training in Virginia, Appellant met a woman. The woman recalled that, during her night out with Appellant, the pair went to a few bars and had more than a few drinks. The woman came in and out of consciousness throughout the night, but she remembered returning to Appellant's room in the Navy Gateway Inns and Suites at Little Creek. At around 4:00 a.m., the woman woke up lying naked next to Appellant. She learned from Appellant that, at some point during the night, they had sex. She then left. While she was waiting for a cab at the gate of the base, she began to cry. A service member on guard duty (a "sentry") approached her, and she told him that Appellant sexually assaulted her. Appellant then attempted to call her. She didn't answer. Meanwhile, the sentry reported the allegations to NCIS.

Later that day, NCIS began investigating the allegations. In doing so, NCIS orchestrated a "controlled text message conversation" between the woman and Appellant. NCIS agents had the woman text Appellant and inquire about the night in question. During that conversation, Appellant admitted that the pair had sex and that the woman was not sober. With that, NCIS agents began coordinating with Appellant's commanding officer in San Diego as well as the commanding officer of the Little Creek base to obtain authorizations to search Appellant's cell phone and hotel room. NCIS also consulted the Judge Advocate General's ("JAG") authorities at both bases. NCIS and JAG officers decided that the Little Creek commanding officer should authorize the search of Appellant's hotel room while Appellant's commanding officer in San Diego should authorize the search of his phone. The officers reasoned that, while the Little Creek commanding officer had control over the base, Appellant's commanding officer in San

3

Diego had control over Appellant. In line with that plan, Appellant's commanding officer in San Diego signed a Command Authorization for Search and Seizure ("CASS") sanctioning the search of Appellant's phone.

The CASS sought to collect messages, photographs, videos, and any other information related to the investigation from Appellant's phone. In its statement of probable cause, the affidavit supporting the CASS connected Appellant's phone to the alleged criminal activity by noting that Appellant attempted to call his accuser after dropping her off at the gate. It also noted that NCIS agents orchestrated a pretext communication between Appellant and the woman accusing him of sexual assault.

A week later, a digital forensics examiner executed the search of Appellant's phone. In doing so, the forensics examiner viewed thumbnail-size icons of photographs on Appellant's phone. The examiner, who was trained in and had experience with child exploitation investigations, believed some of those photographs were images of child pornography.

Based on the evidence discovered during the military search of Appellant's phone, NCIS obtained a federal search warrant from the Eastern District of Virginia to search Appellant's phone for further evidence of child pornography. Under the authority of this second warrant, the forensics examiner continued his analysis of Appellant's cell phone data. He found 78 images and four videos of child pornography. The images depicted known victims of child sexual exploitation, while the videos depicted Appellant performing a sexual act inches from the face of a sleeping child.

4

On March 31, 2017, the Government filed a criminal complaint charging Appellant with possession and production of child pornography. And on April 20, 2017, a grand jury indicted Appellant for possession, production, and transportation of child pornography. On June 6, 2017, Appellant moved to suppress the evidence obtained from the two searches of his phone. After holding a hearing on Appellant's motion, the district court denied it.

The district court first concluded that the evidence obtained during the first search was inadmissible. Applying the Military Rules of Evidence in evaluating the lawfulness of that search, the district court reasoned that the CASS obtained by NCIS did not satisfy the "authorization" requirement of Military Rule of Evidence 315:

> Pursuant to Military Rule of Evidence 315(d), a search is valid only if it is issued by an impartial individual. An impartial individual is a commander, military judge or magistrate. Mil. R. Evid. 315(d)(1) and (2). A military commander is defined as "a commander or other person serving in a position designated by the Secretary concerned as either a position analogous to an officer in charge or a position of command, who has control over the place where the property or person to be search is situated or found, or if that place is not under military control, having control over persons subject to military law or the law of war." Mil. R. Evid. 315(d)(1). A military judge or magistrate "is a person who is authorized under regulations prescribed by the Secretary of Defense or the Secretary concerned." Mil. R. Evid. 315(d)(2).
>
> Here, the person who authorized the CASS for the first search of [Appellant's] telephone was [Appellant's] unit commander in San Diego, CA. Pursuant to the definitions provided in Military Rules of Evidence 315(d)(1), [Appellant's] unit commander did not have the authority to authorize any search [conducted] on [the Little Creek base] because [Appellant's] unit commander did not have control

5

> over the place where the property or person to be searched was situated.

J.A. 215.[1]  The district court further reasoned that, because of the defect in the CASS authorization, it could not apply the exclusionary rule's good faith exception to the evidence obtained as a result of the first search.  Citing Military Rule of Evidence 311, the district court noted, "Pursuant to military law, evidence obtained as the result of an unlawful search may [only] be used if . . . 'the search or seizure resulted from an authorization . . . issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d).'"  J.A. 217–18.  Because the district court found that Appellant's commander in San Diego was not competent to authorize the CASS, the court concluded that "the good faith exception does not cure the first search."  *Id.* at 218.

Despite finding that evidence obtained during the first search was inadmissible, the district court concluded that evidence obtained during the second search was admissible.  In doing so, the district court acknowledged that "the second search relied upon evidence found during the first search," J.A. 218, that the probable cause supporting the search warrant authorizing the second search was "obtained through unlawful means," *id.* at 220, and that "[a]s a result, the magistrate judge's subsequent issuance of a search warrant . . . was void *ab initio*."  *Id.* at 222.  Nonetheless, the district court found that the good faith exception to the exclusionary rule permitted the admission of the evidence obtained during the second search and denied Appellant's motion to suppress.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

6

Thereafter, on September 27, 2017, Appellant plead guilty to production of child pornography. He stipulated to a written statement of facts but reserved his right to appeal the district court's denial of his motion to suppress. On February 15, 2018, the district court sentenced Appellant to 324 months of imprisonment to be followed by 25 years of supervised release. This appeal followed.

## II.

Analyzing a district court's decision to deny a motion to suppress, we review legal conclusions de novo and factual findings for clear error. *See United States v. Kolsuz*, 890 F.3d 133, 141–42 (4th Cir. 2018). In doing so, we consider the evidence in the light most favorable to the Government. *See id.*

## III.

Appellant contends that the Military Rules of Evidence apply here and require suppression. We hold, however, that the Fourth Amendment governs whether evidence is admissible in federal criminal proceedings. The Military Rules of Evidence cannot usurp the Fourth Amendment. We further hold that, even assuming the initial warrant violated the Fourth Amendment, the good faith exception to the exclusionary rule precludes suppression of evidence obtained from the first search. And because the good faith exception saves the evidence of the first search, it also saves the evidence obtained from the second search.

## A.

At the outset, we recognize that federal courts treat searches conducted within the confines of the military differently. As this court observed in *United States v. Rendon*, "[T]he Fourth Amendment protects members of the armed services from unreasonable searches and seizures" with "different standards than those that apply in the civilian context." 607 F.3d 982, 990 (4th Cir. 2010).

That is not to say that military rules wholly displace the framework of the Fourth Amendment. To the contrary, military rules and procedures affect whether a military search satisfies the Fourth Amendment's reasonableness requirement. To determine whether a search is reasonable, the Fourth Amendment requires courts to balance the degree to which a search "intrudes upon an individual's privacy" against "the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (citations omitted). The privacy and governmental interests implicated by military searches are different from those implicated by civilian searches: In military settings, the government has a significant interest in maintaining order and control over its service members. *See Parker v. Levy*, 417 U.S. 733, 744 (1974). Meanwhile, the rights of service members must bend to meet the demands of discipline and duty. *See Burns v. Wilson*, 346 U.S. 137, 140 (1953). For that reason, federal courts consider the Military Rules of Evidence, which outline the rules and procedures that govern how military officers conduct military searches, in evaluating the reasonableness of military searches. *See, e.g.*, *Rendon*, 607 F.3d at 990–91. And when such a search violates those rules in a way that impedes a service member's specific

8

expectations of privacy, "a violation of the Fourth Amendment can result." *See id.* at 991.

But it does not follow that the Military Rules of Evidence themselves tie the hands of the federal courts. "Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *Burns*, 346 U.S. at 140. Just as states "lack the power to impose on federal courts requirements stricter than those mandated by the federal Constitution," *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994), so too does the military. To hold otherwise would "hamper the enforcement of valid federal laws by rendering relevant and reliable evidence unavailable." *Id.* (quoting *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1374 (9th Cir. 1987) (alteration omitted)). For that reason, the Fourth Amendment provides the proper standard for determining whether evidence seized pursuant to a non-federal warrant is admissible in federal court. *Id.* at 616–17; *see also United States v. Van Metre*, 150 F.3d 339, 346–47 (4th Cir. 1998) ("[T]he proper standard for evaluating illegal seizure claims in federal courts has uniformly been whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution." (alteration and internal quotation marks omitted)).

B.

Even assuming there was a Fourth Amendment violation here, we hold that the good faith exception to the exclusionary rule precludes suppression.

Suppression is not itself a right explicitly bestowed by the Fourth Amendment. Rather, suppression of evidence obtained through a search that violates the Fourth

9

Amendment is a judicially created prescription for such a violation. *See United States v. Leon*, 486 U.S. 897, 909 (1984). Indeed, the exclusionary rule is primarily proscriptive: it is designed to safeguard Fourth Amendment rights through its deterrent effect. *Id.* For that reason, "evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Illinois v. Krull*, 480 U.S. 340, 348–49 (1987) (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975) (internal quotation marks omitted)).

In line with that principle, the good faith exception to the exclusionary rule allows courts to introduce evidence obtained in violation of the Constitution but in reasonable reliance on a defective warrant. *See Leon*, 468 U.S. at 905. The Supreme Court has identified only five limitations to the application of the good faith exception: (1) where a magistrate issues a warrant based on a deliberately or recklessly false affidavit, *see Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); (2) where a magistrate lacks neutrality and detachment, *see Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326–28 (1979); (3) where a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)); (4) where a warrant is so facially deficient that a reasonable officer could not believe it was valid, *see id.* at 923; and (5) where police recklessly maintain or knowingly enter false information into a warrant database to enable a future arrest, *Herring v. United*

10

*States*, 555 U.S. 135, 145 (2009). Appellant argues that the CASS at issue here triggers two of those limitations.[2]

1.

Appellant argues that, because the CASS was not authorized by the commanding officer with "control over the place where the property or person to be searched [was] situated," it was facially deficient to the point where "no reasonable person could have concluded that this officer possessed authority to issue the CASS." Appellant's Br. 18. That argument lacks both legal and logical support.

First, we have applied the good faith exception to warrants authorized by magistrate judges lacking jurisdiction. *See, e.g.*, *United States v. McLamb*, 880 F.3d 685, 691 (4th Cir. 2018). We have done so because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* (quoting *Leon*, 468 U.S. at 916). And suppressing evidence obtained pursuant to a warrant issued by the wrong magistrate judge would not appreciably deter police misconduct. *Id.* There is no reason to conclude that a case of the wrong commanding officer should be treated any differently.

---

[2] Appellant presents no independent basis for suppressing the evidence that officers obtained when they executed the federal warrant. Instead, Appellant argues that evidence obtained through the federal warrant must be suppressed because the CASS was illegal and the federal warrant was supported solely by evidence obtained through the CASS. Accordingly, the question before us is whether evidence obtained through the CASS is admissible. We need not scrutinize the federal warrant.

Second, we cannot say that no reasonable officer could review a CASS authorized by the subject of the search's commanding officer -- as opposed to the commanding officer of the subject's current location -- and believe it to be valid. Military Rule of Evidence 315(d) is no bastion of clarity: it places the power to authorize searches on the officer "who has control over the place where the property or person to be searched is situated." One could reasonably conclude that a military service member's commanding officer is the officer who has control over the place where he or she "is situated." Indeed, in this case, several officers reached that conclusion. NCIS consulted Appellant's commanding officer in San Diego and the commanding officer of the Little Creek base. NCIS also consulted JAG attorneys at both bases. Only after taking these measures did NCIS reach the technically incorrect conclusion that Appellant's commander in San Diego should authorize the search of Appellant's phone, while the Little Creek commanding officer should authorize the search of his hotel room. This court is not prepared to call that conclusion, and each of those officers, unreasonable.

2.

Appellant also argues that the good faith exception cannot apply to the CASS because it was so lacking in indicia of probable cause. But "the threshold for establishing this exception is a high one." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). Officers executing warrants are not often expected to question the conclusions of an issuing authority. *Id.* (citing *Leon*, 468 U.S. at 921). For that reason, to preclude application of the good faith exception, an officer's reliance on an issuing authority's probable cause determination must have been "entirely unreasonable." *Id.* at 549. That

12

was not the case here. The affidavit supporting the CASS detailed the allegations of Appellant's accuser. It also noted that NCIS agents orchestrated a controlled text message conversation between Appellant and his accuser and described the admissions that Appellant made during that conversation. Those admissions were consistent with the allegations of Appellant's accuser. Presented with such information, it would not be entirely unreasonable for an officer to believe that the CASS was supported by probable cause.

Accordingly, we hold that the good faith exception to the exclusionary rule applies to the evidence obtained through the CASS. Evidence subsequently obtained through the federal warrant, which was supported by the CASS evidence, is likewise admissible.

IV.

For the forgoing reasons, the judgement of the district court is

*AFFIRMED*.